No. 24-10784-A

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

JOSEPH MERCOLA,

*Plaintiff-Appellant*,

v.

THE NEW YORK TIMES COMPANY,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Middle District of Florida
No. 2:23-cv-00545-SPC-KCD
(The Honorable Sheri Polster Chappell)

**DEFENDANT-APPELLEE'S ANSWER BRIEF**

Charles D. Tobin
Maxwell S. Mishkin
Isabella Salomão Nascimento
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
salomaonascimentoi@ballardspahr.com

*Counsel for Defendant-Appellee*
*The New York Times Company*

## CERTIFICATE OF INTERESTED PERSONS & CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-2(b), Defendant-Appellee incorporates by reference the Certificate of Interested Persons included in Plaintiff-Appellant's initial brief, with the following addition: Salomão Nascimento, Isabella.

Defendant-Appellee further certifies that The New York Times Company is a publicly traded company (NYSE: NYT) with no parent corporation, and that no publicly held corporation owns 10% or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

Because the District Court correctly dismissed Plaintiff-Appellant's claims pursuant to well settled law and based only on the parties' written submissions, Defendant-Appellee The New York Times Company respectfully submits that oral argument is not necessary for the resolution of this appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS & CORPORATE
DISCLOSURE STATEMENT ...............................................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ ii

TABLE OF AUTHORITIES ................................................................................v

STATEMENT OF THE ISSUES.........................................................................ix

INTRODUCTION ................................................................................................1

STATEMENT OF THE CASE.............................................................................3

    A.    Plaintiff-Appellant Mercola ...................................................3

    B.    The Challenged Article ...........................................................4

    C.    Mercola's Pre-Suit Correspondence And Complaint...........7

    D.    The Times's Motion To Dismiss And The District
        Court's Ruling .........................................................................7

SUMMARY OF ARGUMENT ............................................................................10

STANDARD OF REVIEW .................................................................................11

ARGUMENT .......................................................................................................13

I.    THE DISTRICT COURT CORRECTLY CONCLUDED
    THAT STATEMENT ONE IS A PROTECTED EXPRESSION
    OF OPINION.............................................................................................13

II.    THE DISTRICT COURT CORRECTLY CONCLUDED
    THAT STATEMENT TWO IS NOT DEFAMATORY ..............................20

    A.    Statement Two Is Not Actionable Because It Is
        Not Defamatory......................................................................20

    B.    Mercola's Newly Raised Arguments Regarding
        Statement Two Are Improper And Do Not Render
        It Defamatory In Any Event...................................................23

III.    THIS COURT CAN ALSO AFFIRM THE RULING BELOW ON THREE INDEPENDENT AND ALTERNATIVE GROUNDS .................27

    A.    Mercola Failed to Plausibly Allege That the Article Is False.............28

    B.    Mercola Failed To Plausibly Allege Actual Malice Fault .................30

    C.    Mercola Failed to Satisfy Florida's Pre-Suit Notice Requirements.......................................................................35

IV.    DISMISSAL WITH PREJUDICE WAS PROPER BECAUSE NO AMENDMENT CAN CURE THE COMPLAINT'S DEFICIENCIES ................................................................37

CONCLUSION ........................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur v. Offit,*
  2010 WL 883745 (E.D. Va. Mar. 10, 2010).......................................................15

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................11, 12, 34

*Auraria Student Housing at the Regency, LLC v. Campus Village*
  *Apartments, LLC,*
  2014 WL 4651643 (D. Colo. Sept. 18, 2014)....................................................25

*Berisha v. Lawson,*
  973 F.3d 1304 (11th Cir. 2020) ........................................................................29

*Blankenship v. NBCUniversal, LLC,*
  60 F.4th 744 (4th Cir. 2023) .............................................................................32

*Bongino v. Daily Beast Co.,*
  477 F. Supp. 3d 1310 (S.D. Fla. 2020).............................................................35

*Byrd v. Hustler Magazine, Inc.,*
  433 So. 2d 593 (Fla. 4th DCA 1983).................................................................28

*Canonico v. Callaway,*
  26 So. 3d 53 (Fla. 2d DCA 2010).................................................................36, 37

*Coastal Wellness Centers, Inc. v. Progressive American Insurance Co.,*
  309 F. Supp. 3d 1216 (S.D. Fla. 2018).............................................................33

*Crawford's Auto Center, Inc. v. State Farm Mutual Automobile*
  *Insurance Co.,*
  945 F.3d 1150 (11th Cir. 2019) ........................................................................38

*Daniels v. Loop Interactive Group, LLC,*
  2015 WL 134308 (Cal. Ct. App. Jan. 9, 2015).................................................25

*Digital Music News LLC v. Superior Court,*
  171 Cal. Rptr. 3d 799 (Cal. Ct. App. 2014)......................................................25

v

*Dunn v. Air Line Pilots Association*,
   193 F.3d 1185 (11th Cir. 1999) ..........................................................31

*Durango-Georgia Paper Co. v. H.G. Est., LLC*,
   739 F.3d 1263 (11th Cir. 2014) ..........................................................27

*Edward L. Nezelek, Inc. v. Sunbeam Television Corp.*,
   413 So. 2d 51 (Fla. 3d DCA 1982) .....................................................37

*Heinen v. Royal Caribbean Cruises Ltd.*,
   806 F. App'x 847 (11th Cir. 2020) ......................................................24

*Hill v. White*,
   321 F.3d 1334 (11th Cir. 2003) ..........................................................11

*Hopkins v. Lapchick*,
   981 F. Supp. 901 (D. Md. 1997) .........................................................13

*Hunt v. Liberty Lobby*,
   720 F.2d 631 (11th Cir. 1983) ............................................................33

*Immanuel v. CNN*,
   618 F. Supp. 3d 557 (S.D. Tex. 2022) .....................................15, 16, 18

*Kendall v. Daily News Publishing Co.*,
   716 F.3d 82 (3d Cir. 2013) .................................................................32

*Khashan v. State Farm Mutual Automobile Insurance Co.*,
   2019 WL 5445199 (Cal. Ct. App. Oct. 24, 2019) ..............................22

*Klayman v. City Pages*,
   2015 WL 1546173 (M.D. Fla. Apr. 3, 2015)..................................30, 32

*Malone v. WP Co. LLC*,
   2023 WL 6447311 (W.D. Va. Sept. 29, 2023) .......................14, 16, 17

*Masson v. New Yorker Magazine*,
   501 U.S. 496 (1991)...........................................................................28

*McCullough v. Gannett, Co.*,
   2023 WL 3075940 (E.D. Va. Apr. 25, 2023) .................................18, 19

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ....................................................11, 12, 27, 30, 31

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)............................................................................................13

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) .........................................................................38

*Moore v. Cecil*,
    109 F.4th 1352 (11th Cir. 2024) ....................................................12, 30, 31, 32

*National Association of Letter Carriers v. Austin*,
    418 U.S. 264 (1974)........................................................................................28

*Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*,
    951 F.3d 952 (8th Cir. 2020) ............................................................................32

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013) .......................................................................14, 15

*Paylor v. Hartford Fire Insurance Co.*,
    748 F.3d 1117 (11th Cir. 2014) .........................................................................19

*Philadelphia Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986)........................................................................................28

*Posner v. Essex Insurance Co., Ltd.*,
    178 F.3d 1209 (11th Cir. 1999) .........................................................................38

*Readon v. WPLG, LLC*,
    317 So. 3d 1229 (Fla. 3d DCA 2021)................................................................28

*Rubin v. United States News & World Report Inc.*,
    271 F.3d 1305 (11th Cir. 2001) ...................................................................21, 22

*Smith v. Cuban American National Foundation*,
    731 So. 2d 702 (Fla. 3d DCA 1999)............................................................28, 29

*SolidFX, LLC v. Jeppesen Sanderson, Inc.*,
    2014 WL 1319361 (D. Colo. Apr. 2, 2014) .......................................................25

*Strick v. Pierce*,
    607 F. Supp. 445 (N.D. Ill. 1985)......................................................................22

*Swanson v. Baker & McKenzie, LLP*,
    2013 WL 1087579 (N.D. Ill. Mar. 14, 2013) ...............................................22, 23

*Tobinick v. Novella*,
    848 F.3d 935 (11th Cir. 2017) ...................................................................34

*Tucker v. Fischbein*,
    237 F.3d 275 (3d Cir. 2001) ......................................................................35

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) .......................................................12, 13, 31

*Western Surety Co. v. Steuerwald*,
    760 F. App'x 810 (11th Cir. 2019) .............................................................38

**Statutes**

Fla. Stat. § 770.01 ..........................................................................11, 35, 36

**Other Authorities**

Fed. R. Civ. P. 5 ...................................................................................36

Fed. R. Civ. P. 15 .................................................................................37

Fla. R. Civ. P. 1.080(a) ..........................................................................36

4B Wright & Miller, Fed. Prac. & Proc. Civ. § 1164 (4th ed.) ...............................37

# STATEMENT OF THE ISSUES

1. Whether the District Court correctly concluded that the first of two statements that Plaintiff-Appellant Joseph Mercola challenged in The New York Times's article is non-actionable because it is opinion, as a matter of law.

2. Whether the District Court correctly concluded that the second of two statements Mercola challenged in The Times's article is non-actionable because it does not reasonably convey a defamatory meaning.

3. Whether this Court should affirm the District Court's ruling on the additional and alternative grounds that the Complaint (1) fails to plausibly allege that The Times's article is materially false; (2) fails to plausibly allege that The Times published the article with actual malice fault; and/or (3) fails to plausibly allege that Mercola met Florida's pre-suit requirements for libel actions.

4. Whether the District Court correctly dismissed the Complaint with prejudice because amendment would be futile.

**INTRODUCTION**

Plaintiff-Appellant Joseph Mercola, D.O. ("Mercola") appeals the dismissal of his lawsuit against Defendant-Appellee The New York Times Company ("The Times") over its reporting on COVID and Mercola's role in spreading unreliable information about the treatment and prevention of that disease. The District Court correctly dismissed Mercola's Complaint with prejudice, and this Court should affirm because Mercola has failed to state a defamation claim as a matter of law.

Mercola is a prominent critic of conventional medicine and self-described leading advocate for natural health remedies. He has developed a lucrative internet business, Mercola.com, to peddle his own name-brand products, which are the same remedies and preventive treatments for which he advocates. During the pandemic, Mercola focused on COVID, including disputing CDC advice, challenging the safety and efficacy of COVID vaccines, and selling his own alternative treatments for the disease. These activities garnered substantial government attention, subjecting Mercola and his business to regulatory rebuke by the FDA. Public officials have blamed Mercola for a vast amount of the disinformation about COVID shared on social media.

Within that context, in July 2021, The Times published an article that described Mercola as "the chief spreader of coronavirus misinformation online, according to researchers," and reported that Mercola "built a vast operation to push

natural health cures, disseminate anti-vaccination content and profit from all of it," according to "researchers who have studied his network." Doc. 1-1 (Compl. Ex. A) at 2-3.[1]

Mercola does not dispute the vast majority of the article, but he asserted claims against The Times over just two statements: (1) characterizing his criticisms of COVID vaccines as "easily disprovable" ("Statement One") and (2) noting that The Times "was unable to verify his claim" concerning an article he said he co-authored ("Statement Two"). Doc. 1 (Compl.) at 4 ¶¶ 12-13 and 7-8 ¶¶ 31-33. The Times moved to dismiss these claims under Rule 12(b)(6) and the District Court granted that motion and dismissed the Complaint with prejudice.

As the District Court correctly concluded, Mercola failed to state a claim over either challenged statement. Statement One is not actionable because it is an opinion, as a matter of law. Statement Two is not actionable because it does not reasonably convey a defamatory meaning. This Court can and should affirm on those same, straightforward and well settled grounds.

In addition, this Court can affirm on three independent and alternative bases that the parties fully briefed but the District Court did not address. First, the challenged statements are not materially false, because if the challenged statements

---

[1] Citations to the record reference the District Court's Document ID, the title of the document, and the page number of that document from the District Court's header.

were removed, the unchallenged remaining reporting would carry the same overall gist.  Second, Mercola is a public figure for purposes of this claim, and he has not pleaded any facts, as the First Amendment requires, plausibly establishing that The Times published with actual malice.  Third, Mercola failed to satisfy Florida's pre-suit notice requirements for defamation actions against the press.

Under settled Florida law and First Amendment doctrine, Mercola's claims against The Times cannot survive a Rule 12(b)(6) motion to dismiss.  Moreover, Mercola cannot cure these deficiencies by amending his pleadings.  The District Court therefore correctly dismissed Mercola's Complaint with prejudice.  This Court should now affirm.

## STATEMENT OF THE CASE

### A.    Plaintiff-Appellant Mercola

Mercola is an osteopathic physician, business owner, and the founder of Mercola.com, a "natural health" website.  *See* Doc. 1 (Compl.) at 1.[2]  His website boasts that it receives more than 10 million views monthly and claims that his newsletter has more than 1 million subscribers.  *See* Doc. 28-3 (The Times's Mot. to Dismiss ("Times MTD") Ex. 2) at 9.  Mercola has millions of followers on social media as well, including nearly 3 million on Facebook alone.  *See* Doc. 1-1

---

[2] The Complaint's factual allegations are accepted as true solely for purposes of this brief.

(Compl. Ex. A) at 5.  Mercola is also the author of more than a dozen books,

including *The Truth About COVID-19: Exposing the Great Reset, Lockdowns,*

*Vaccine Passports, and the New Normal*.  *See* Doc. 28-3 (Times MTD Ex. 2) at 4.

He is also a podcaster, hosting episodes such as "The Well-Known Hazards of

Coronavirus," "Masks Do Not Inhibit Viral Spread," and "Inflated COVID Cases

& Fatalities."  *See generally* Doc. 28-4 (Times MTD Ex. 4).

**B.     The Challenged Article**

On July 24, 2021, The Times published an article titled *The Most Influential*

*Spreader of Coronavirus Misinformation Online* (the "Article").  The Article

begins by describing a February 2021 essay that "declared coronavirus vaccines

were 'a medical fraud' and said the injections did not prevent infections, provide

immunity or stop transmission of the disease," and further asserted that COVID

vaccines "alter your genetic coding, turning you into a viral protein factory that has

no off-switch."  *See* Doc. 1-1 (Compl. Ex. A) at 2.  The Times describes those

claims as "easily disprovable," but notes that the essay nevertheless "reached

400,000 people" on Facebook.  *Id.*  The Times explains that the essay "traced back

to one person: Joseph Mercola."  *Id.*  Mercola concedes he wrote that February

2021 essay and made such claims about COVID vaccines.  *See* Appellant's

Opening Brief ("Mercola Br.") at 2 (Mercola "authored" the essay).

The Article then explains that Mercola is a physician who "has long been a subject of criticism and government regulatory actions for his promotion of unproven or unapproved treatments." Doc. 1-1 (Compl. Ex. A) at 2. As the Article notes, and Mercola does not dispute, Mercola "has built a vast operation to push natural health cures, disseminate anti-vaccination content and profit from all of it." *Id.* at 3. The Article recounts that Mercola has "published over 600 articles on Facebook that cast doubt on Covid-19 vaccines since the pandemic began," which helped earn him "the top spot in the 'Disinformation Dozen,' a list of 12 people responsible for sharing 65 percent of all anti-vaccine messaging on social media," which was published by the Center for Countering Digital Hate ("CCDH"). *Id.*[3]

The Times included Mercola's response in the Article. He comments it is "quite peculiar" to be "named as the #1 superspreader of information" because "some of his Facebook posts were only liked by hundreds of people." *Id.* at 4. The Article then quotes Mercola stating, "I am the lead author of a peer reviewed publication regarding vitamin D and the risk of Covid-19 and I have every right to inform the public by sharing my medical research." *Id.* As originally published,

---

[3] The U.S. Surgeon General cited this CCDH report on July 15, 2021, just days before The Times published its challenged Article. *See* Doc. 28-9 (Times MTD Ex. 8) at 7, 22.

the Article stated that Mercola "did not identify the publication, and The Times was unable to verify his claim." *Id.* Mercola's Complaint, however, alleges that he had included a link to the publication in an email to The Times. Doc. 1 (Compl.) at 6 ¶ 27; Doc. 1-2 (Compl. Ex. B) at 3. On July 26, 2021, the same day that Mercola's representative emailed The Times to question that sentence, The Times revised the Article to say that The Times "was unable to verify the claims in the study" and to hyperlink to Mercola's referenced publication. Doc. 1 (Compl.) at 8-11 ¶¶ 35-40; Doc. 1-3 (Compl. Ex. C) at 4.

The Article then recounts Mercola's professional trajectory, from a "small private practice in 1985" to his current position as an influencer with more than a million followers on social media. Doc. 1-1 (Compl. Ex. A) at 4. The Article also notes Mercola was the subject of regulatory actions, including that the "Federal Trade Commission brought false-advertising claims against Dr. Mercola in 2017 based on the health claims about tanning beds." *Id.* at 6. Mercola does not deny the accuracy of these statements, nor could he. *See id.* (providing hyperlink to FTC statement regarding its complaint against Mercola).

The Article then notes that "[w]hen the coronavirus hit," Mercola "jumped on the news, with posts questioning the origins of the disease," and that he "argue[d] that masks did not stop the spread of the virus." *Id.* Mercola also "began promoting vitamin supplements as a way to ward off the coronavirus,"

leading to an FDA warning letter that called those products "unapproved and misbranded." *Id.* The Article concludes by noting Mercola had recently published a Facebook post questioning the efficacy of COVID vaccines. *Id.* Again, Mercola has never challenged these statements.

### C. Mercola's Pre-Suit Correspondence And Complaint

On July 26, 2021, Mercola emailed The Times regarding the Article, after which The Times issued a correction – which Mercola does not challenge in this lawsuit – regarding the terms of a settlement Mercola reached with the FTC. Doc. 1 (Compl.) at 9-10 ¶ 37. Mercola did not contact The Times again for two years, until July 2023, when he sent a letter notifying The Times of his intent to file a defamation lawsuit. *See generally* Doc. 28-2 (Times MTD Ex. 1) at 4-7.

On July 21, 2023, just days before the statute of limitations would expire, Mercola filed this case against The Times, claiming that he was defamed by "[t]he publication of Statement One and Statement Two." Doc. 1 (Compl.) at 15 ¶ 61. Mercola asserted claims of defamation (Count I), defamation per se (Count II), and defamation by implication (Count III). *Id.* at 18-22 ¶¶ 64-92. Mercola sought "actual, compensatory, and punitive damages," as well as fees and costs. *Id.* at 22.

### D. The Times's Motion To Dismiss And The District Court's Ruling

On September 26, 2023, The Times timely moved to dismiss the Complaint, arguing that (1) Statement One is a non-actionable opinion, as a matter of law,

given its subject matter; (2) Statement Two is not capable of conveying a defamatory meaning; (3) the Article as a whole is not materially false because those parts Mercola has not challenged carry the same overall gist; (4) Mercola, a limited purpose public figure, must – but failed to – adequately plead that The Times published the Article with actual malice; and (5) Mercola failed to satisfy Florida's pre-suit notice requirement by filing before the five-day waiting period expired. *See generally* Doc. 28 (Times MTD). Mercola filed a response in opposition, Doc. 32, The Times sought and received permission to file a reply, Doc. 47, and Mercola sought and received permission to file a sur-reply, Doc. 50.

On February 12, 2024, the District Court granted The Times's motion to dismiss. Doc. 55 (Op. & Order). The District Court first determined that Statement One is not a verifiable statement of fact that can be proven true or false. *Id*. at 6-8. Rather, the District Court explained, The Times's statement "that Plaintiff's claims are easily disprovable takes a side in a scientific debate." *Id.* at 6. The District Court noted that it would be difficult "to find a scientific topic of the day more hotly debated than the efficacy of COVID-19 vaccines," particularly "in 2021 when [The Times] first published the report," and the District Court declined Mercola's invitation "to pick a side in that debate." *Id*. at 6, 8. In reaching this conclusion, the District Court followed a long line of authority "dismiss[ing] strikingly similar defamation claims." *Id*. at 6-7 (collecting cases).

Next, the District Court concluded that Statement Two was not defamatory because The Times's report that it could not "verify" Mercola's claim that he was the lead author of a peer reviewed publication "does not tend to lower [Mercola]'s reputation in the community" or "expose [him] to hatred, ridicule, or contempt." *Id*. at 9. The District Court also rejected Mercola's defamation by implication argument – *i.e.*, that the statement implies he lied about his research and its publication – as an implausible reading on the face of the Article. *Id*. Specifically, the remainder of the Article "does not utilize innuendo," but rather "explicitly states" its conclusions, such that if The Times "thought that [Mercola] lied about publishing the article, it would have just said so. It did not. And reading that meaning into [the Article] would be unreasonable." *Id*. at 10-11.

The District Court concluded by noting that Mercola had not challenged any other part of the Article besides Statements One and Two. *Id*. at 11. The ruling does not address The Times's material falsity or actual malice arguments, nor does it decide whether Mercola had satisfied Florida's pre-suit notice requirements, although the District Court did note that Mercola failed to even allege compliance with those requirements in his Complaint. *Id*. at 4 n.1.

Mercola timely noticed this appeal from the District Court's ruling. Doc. 57.

## SUMMARY OF ARGUMENT

The District Court correctly dismissed Mercola's Complaint for failure to state a claim, and this Court should affirm because, as the District Court ruled below, both of the challenged statements are non-actionable as a matter of law. Statement One, which characterized Mercola's statements about COVID vaccines as "easily disprovable," is non-actionable because it is the type of remark about an ongoing scientific dispute that the law treats as an expression of opinion rather than a statement of fact. Statement Two, which reported that The Times could not verify Mercola's claim of authoring a particular study, is non-actionable because it not defamatory: it does not on its face tend to lower Mercola's reputation in the community, nor does it reasonably convey any implication that would do so.

In addition, or in the alternative, the Court should affirm the District Court's dismissal order on any or all of three other independent grounds.

**First**, Mercola did not and cannot plausibly allege that the Article is materially false under Florida law. Even assuming the Article contains the errors Mercola contends, he has not challenged other statements in the Article that carry the same meaning. Thus, because removing the challenged statements would not change the "gist" of the Article as a whole, the challenged statements are not *materially* false.

**Second**, though concededly a public figure, Mercola failed to plead any facts to plausibly allege that The Times published the Article with actual malice under the First Amendment to the United States Constitution – that is, knowing it was false or with a high degree of awareness of its probable falsity.

**Third**, Mercola failed to provide timely pre-suit notice under Section 770.01, Fla. Stat., which requires service of notice of the precise statements at issue at least five business days before initiating suit.  In fact, Mercola concedes that he failed to even *allege* that he satisfied the conditions of this statute, which is a requirement under both Florida law and the Federal Rules of Civil Procedure.

For any or all of these reasons, the Court should affirm the District Court's order dismissing Mercola's Complaint with prejudice.

## STANDARD OF REVIEW

This Court reviews the sufficiency of a complaint *de novo*.  *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016).  While the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff, *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), to survive dismissal under Rule 12(b)(6), a complaint must "'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Rather, for a claim to have "facial plausibility," a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

This Court has further held that where, as here, constitutional defenses of protected speech are raised, rigorous application of the plausibility standard takes on particular importance. *Michel*, 816 F.3d at 702. That is because in such cases, "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation" and "[f]orcing publishers to defend inappropriate suits through expensive discovery proceedings in all cases would constrict" the "'breathing space' needed to ensure robust reporting on public figures and events." *Id.* (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964)). This Court has thus repeatedly affirmed dismissal of defamation claims on preliminary motions pursuant to Rule 12(b)(6). *See, e.g.*, *Moore v. Cecil*, 109 F.4th 1352, 1356 (11th Cir. 2024) (affirming dismissal of defamation claims where complaint failed to plausibly plead actual malice); *Michel*, 816 F.3d at 706 (same); *Turner v. Wells*, 879 F.3d 1254, 1259 (11th Cir. 2018) (affirming dismissal of defamation claims for failure to plausibly plead actual malice and because challenged statements were non-actionable opinion). The Court should reach the same result here and affirm.

**ARGUMENT**

## I. THE DISTRICT COURT CORRECTLY CONCLUDED THAT STATEMENT ONE IS A PROTECTED EXPRESSION OF OPINION

In challenging Statement One, Mercola objects that The Times reported as "easily disprovable" his claim that COVID vaccines (1) "alter your genetic coding, turning you into a viral protein factory" and (2) do not "prevent infections, provide immunity or stop transmission" of the disease. As the District Court rightly concluded, this defamation claim fails as a matter of law because Statement One characterizes an ongoing scientific debate on the efficacy of COVID vaccines, such that "to resolve Plaintiff's claim about the defamatory nature of this statement, the Court would have to pick a side in that debate." Doc. 55 (Op. & Order) at 2-3. The District Court would not do so, nor should this Court.

It is axiomatic in defamation law that "a statement on a matter of public concern must be provable as false before there can be liability." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990). In other words, to be actionable a challenged statement must convey a provably false assertion of fact rather than an expression of opinion. Statement One is thus non-actionable on its face because whether something is "easily" disprovable, or instead is hard to disprove, is a matter of opinion – both in colloquial terms and as a matter of law. *See, e.g., Turner*, 879 F.3d at 1264 (such a "subjective assessment" is not actionable because it "is not readily capable of being proven true or false"); *Hopkins v. Lapchick*, 981

13

F. Supp. 901, 903 (D. Md. 1997) (assertion that case is "an easy one" is "obviously a non-actionable expression of opinion under well-settled First Amendment law"), *aff'd*, 129 F.3d 116 (4th Cir. 1997).

In addition, courts have been particularly resistant to claims, such as this one, that seek to entangle the judiciary in scientific debates. Mercola has, by his account, regularly criticized mainstream medical theories. Others – including The Times – have criticized his theories. Courts routinely treat such scientific criticisms and counter-speech as non-actionable opinion, as a matter of law, because it would chill academic inquiry and public discourse to do otherwise and "pick winners and losers in a scientific debate." *Malone v. WP Co. LLC*, 2023 WL 6447311, at *5 (W.D. Va. Sept. 29, 2023).

In *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013), for example, the parties manufactured rival "biological substances" used to treat premature infants. Plaintiff sued defendants over their claims, which cited a peer-reviewed study, that their product was safer and more effective. *Id.* at 492-94. The Second Circuit affirmed dismissal under Rule 12(b)(6), noting that when "a statement is made as part of an ongoing scientific discourse about which there is considerable disagreement, the traditional dividing line between fact and opinion is not entirely helpful." *Id.* at 497. The court noted that "[i]n a sufficiently novel area of research, propositions of empirical 'fact' advanced in the literature may be

14

highly controversial and subject to rigorous debate by qualified experts," and "courts are ill-equipped to undertake to referee such controversies." *Id.* Thus, "while statements about contested and contestable scientific hypotheses constitute assertions about the world that are in principle matters of verifiable 'fact,' for purposes of the First Amendment and the laws relating to . . . defamation, they are more closely akin to matters of opinion." *Id.*

Likewise, in *Arthur v. Offit*, 2010 WL 883745 (E.D. Va. Mar. 10, 2010), the head of an anti-vaccine group sued for defamation after defendant, a prominent pediatrician, stated that plaintiff "lies" about the risks of pediatric vaccines. *Id.* at **1-2. The court concluded that the statement was a non-actionable expression of opinion for several reasons, including that assessing its truth or falsity would "threaten[] to ensnare the Court in the thorny and extremely contentious debate over the perceived risks of certain vaccines . . . and, at bottom, which side of this debate has 'truth' on their side," which involves "academic questions that are not the sort of thing that courts or juries resolve in the context of a defamation action." *Id.* at *6 (internal marks omitted). Thus, because courts are "reticen[t] about venturing into the thicket of scientific debate, especially in the defamation context," the court dismissed the complaint under Rule 12(b)(6). *Id.*

A Texas federal court reached the same conclusion in another COVID-related case in *Immanuel v. CNN*, 618 F. Supp. 3d 557 (S.D. Tex. 2022). There,

plaintiff "allege[d] that CNN defamed her by covering her statements advocating and promoting [hydroxychloroquine] to treat COVID and by criticizing her views as disinformation supporting harmful medical treatments." *Id.* at 564. Citing *ONY* and *Arthur*, the court wrote in granting defendant's Rule 12(b)(6) motion that "[s]tatements of different, even conflicting, opinions, about unsettled matters of scientific or medical treatment that are the subject of ongoing public debate and deep public interest, cannot give rise to defamation claims," because "[c]ourts do not use defamation law to decide or cut short arguments over unsettled questions of what medication best or most safely prevents or treats disease." *Id.* The court thus dismissed the claim. *Id.* at 567.

Even more recently, a Virginia federal court rejected a defamation lawsuit over an article in The Washington Post characterizing another doctor's claim that COVID vaccines "are not working" as "misinformation" that was "discredited." *Malone*, 2023 WL 6447311, at *1. As that court explained, defamation litigation is the inappropriate forum "to pick winners and losers in a scientific debate":

> [T]he Washington Post article at issue takes a side in a public debate over the efficacy of COVID-19 vaccines. Unhappy with what he apparently views as the Post's hyperbolic opposition to his position, Plaintiff invites the Court to settle the matter. The law, however, counsels that the Court decline Plaintiff's invitation to pick winners and losers in a scientific debate, such as that at issue here. Further still, Plaintiff cannot enter a public debate and then cry foul when his views are criticized.

*Id.* at *5.  The court granted the newspaper's Rule 12(b)(6) motion and dismissed that plaintiff's defamation complaint for failure to state a claim.  *Id.* at *10.

As the District Court did below, this Court should follow *ONY*, *Arthur*, *Immanuel*, and *Malone*, and conclude that Statement One is a non-actionable opinion.  Indeed, Mercola now concedes that Statement One comments on a matter of ongoing scientific debate – the efficacy of COVID vaccines – just as the challenged statements did in *Malone*.  *See* Mercola Br. at 13-14 ("the Article was written during the first significant drop in COVID-19 vaccine administration," when the CDC declared the Delta variant a "virus of concern" and encouraged vaccination, and "studies began to be released that questioned the efficacy of the vaccines"); *id.* at 20 ("the Article was published about a highly controversial issue involving some scientific debate").  The concession thus echoes the District Court, which "strain[ed] to find a scientific topic of the day more hotly debated than the efficacy of COVID-19 vaccines," and noted "[t]his was especially so in 2021 when Defendant first published the report."  Doc. 55 (Op. & Order) at 6.

Despite this concession, which is fatal to his claim, Mercola argues that what he calls "the scientific debate opinion defense" is "inapplicable" here because the *ONY-Arthur-Immanuel-Malone* line of cases is "factually distinguishable" or "unpersuasive."  Mercola Br. at 21, 26.  Specifically, Mercola asserts that the District Court erred by relying on *ONY* and *Arthur* because Statement One appears

17

in a news report rather than a scientific journal, was written by a journalist, and did not include all of the minutiae of the underlying science. *Id*. at 23-24. The courts in *Arthur*, *Immanuel*, and *Malone*, however, imposed none of the rigid limits Mercola urges here on the applicability of the opinion doctrine to ongoing scientific debate.

Recognizing no principled distinction separates this case from *Immanuel*, *Malone*, and another case, *McCullough v. Gannett, Co.*, 2023 WL 3075940 (E.D. Va. Apr. 25, 2023),[4] Mercola resorts to deriding those decisions as "self-perpetuating legal rulings, devoid of any true analysis on whether the defendant-medium was really engaging in scientific debates." Mercola Br. at 25. This criticism, too, relies on a faulty premise: that only certain individuals and publications are permitted to "weigh[] in on controversial issues of public concern," such as "how to medically treat COVID." *Immanuel*, 618 F. Supp. 3d at 566. It is therefore no surprise that Mercola cannot identify *any* authority to support his critique of these key cases.

Finally, Mercola makes a misguided appeal to "policy consideration," claiming that The Times's intent in publishing the Article was to "silence" him

---

[4] In *McCullough*, the court dismissed under Rule 12(b)(6) a doctor's defamation claim arising from a newspaper article that characterized his criticism of COVID vaccines as "dangerous to the public and pure quackery." 2023 WL 3075940, at *2. In concluding that this statement was not actionable, the court cited *Arthur* and noted that "[i]t is not this Court's job to pick sides in a scientific debate." *Id.* at *7.

personally and stifle "debate on the efficacy of the COVID-19 vaccines" more generally. Mercola Br. at 16. Mercola declares that affirming the decision below would therefore "erode the principle of uninhibited, robust debate." *Id.* at 28. The Court need not even consider this "policy" argument because Mercola waived it through failure to "raise the issue before the District Court." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125 (11th Cir. 2014) (declining to consider public policy argument raised for the first time on appeal). Moreover, even if this Court were inclined to address this waived argument, the Court should reject it as a matter of logic because The Times is not "silencing" the debate over COVID vaccines when it criticizes Mercola's stance on that issue, it is *engaging* in that debate. As the district court concluded its opinion in *McCullough*:

> During a time of intense national upheaval due to a worldwide pandemic, [plaintiff] exercised his First Amendment right to speak out on issues related to COVID-19. His right to do so was firmly protected by the First Amendment, and he accordingly spoke without reprisal. Now, with the tables turned, he has sought to impose civil liability on the media that reported on what he said and offered competing viewpoints. The First Amendment does not condone such a lawsuit. Rather, it protects the speech that criticized Dr. McCullough—just as it protected his own speech.

2023 WL 3075940, at *17. These words apply with equal force in this case.

Indeed, Mercola enjoys the same First Amendment protections, for without them

vaccine developers and scientists could potentially sue him for defamation over *his* statements that *their* opinions about the efficacy of COVID vaccines are wrong.

The District Court did not err in concluding that Statement One is on all fours with the statements in *ONY*, *Arthur*, *Immanuel*, *Malone*, and *McCullough*, and as a result it correctly determined that Mercola cannot state a claim over Statement One because it expresses a non-actionable opinion regarding a subject of ongoing scientific debate. This Court should affirm on that same, sound basis.

## II. THE DISTRICT COURT CORRECTLY CONCLUDED THAT STATEMENT TWO IS NOT DEFAMATORY

This Court should also affirm the District Court's conclusion that Statement Two cannot give rise to a defamation claim because Statement Two is not defamatory and therefore is not actionable as a matter of law.

### A. Statement Two Is Not Actionable Because It Is Not Defamatory

In Statement Two, The Times originally wrote that it was "unable to verify [Mercola's] claim" that he was "the lead author of a peer reviewed publication regarding vitamin D and the risk of Covid-19," Doc. 1 (Compl.) at 7-8 ¶ 33, and The Times later wrote that it could not verify "the claims in [that] study," *id.* at 10 ¶¶ 39-40. Throughout this lawsuit, Mercola has urged the courts to interpret Statement Two as asserting The Times could not verify his "claim of authorship." *Id*. at 7 ¶ 31. The District Court correctly concluded that, even accepting that

interpretation, the statement does not carry the kind of defamatory meaning that the law requires to sustain a claim.

The First Amendment would mean little if every perceived slight could give rise to a claim. As the District Court noted, "[a] defamatory statement is one that 'tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation.'" Doc. 55 (Op. & Order) at 8 (quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1109 (Fla. 2008)). That significant hurdle – whether, at the threshold, a statement is capable of conveying a defamatory meaning – is a question of law for the court to address at the motion to dismiss stage. *Id*. (citing *Turner*, 879 F.3d at 1262-63). In doing so, the court considers the context of the publication as a whole and evaluates it as it would be understood by the "average reader." *Rubin v. United States News & World Report Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001).

The District Court did just that. It first determined, from the perspective of the average reader, that Statement Two was susceptible to only one reasonable interpretation: that The Times was unable to verify Mercola's claim of authorship. Doc. 55 (Op. & Order) at 10-11. It then considered whether that meaning tended to expose Mercola to hatred, ridicule, contempt, or business injury and correctly concluded, in part by comparing The Times's statement to similar, non-actionable

"unable to verify" statements at issue in other cases, that Statement Two was not defamatory. *Id.* at 9.[5]

In *Khashan v. State Farm Mutual Automobile Insurance Co.*, for example, plaintiff sued State Farm for defamation after State Farm said that Geico "had been unable to confirm" plaintiff "had a valid liability insurance policy in force on the date of the [car] accident." 2019 WL 5445199, at *5 (Cal. Ct. App. Oct. 24, 2019) (cleaned up). The court ruled in favor of State Farm, explaining that the challenged statement "merely states that Geico was unable to confirm the existence of a valid policy, not that [Plaintiff] actually lacked auto insurance." *Id.* at *6.

Likewise, in *Swanson v. Baker & McKenzie, LLP*, plaintiff sued her former employer for defamation over its statement that it was unable to verify her past employment with them. The district court explained that "[e]ven viewing the facts in the light most favorable to [plaintiff], Defendants' statements describe their ability to make such a verification, not, as [plaintiff] would like the Court to believe, whether [plaintiff] did in fact work [for defendant] at any time." 2013 WL 1087579, at *7 (N.D. Ill. Mar. 14, 2013), *aff'd*, 527 F. App'x 572 (7th Cir. 2013).

_____

[5] Mercola dismisses these cases as "unpersuasive and factually distinguishable," *see* Mercola Br. at 30, but as then-District Judge Rovner once observed, "All cases are distinguishable on their facts because each case is unique: the question is whether the distinction is of substance." *Strick v. Pierce*, 607 F. Supp. 445, 448 (N.D. Ill. 1985). Mercola does not identify any distinction of substance between those cases and this one.

As a result, such statements "would [not] have damaged [plaintiff] or prejudiced her in her trade, profession, or business, as required to establish defamation." *Id.*

As with this precedent, the statement that The Times was "unable to verify" Mercola's claim, to a reasonable reader, speaks only to The Times's abilities, not to whether Mercola was, in fact, the lead author of a publication regarding COVID. Indeed, reading the statement in the context of the entire Article, the District Court found the approach of the Article to be "explicit" as "[i]t does not utilize innuendo," offering several examples for support. Doc. 55 (Op. & Order) at 10-11. In other words, the Article makes clear to the reasonable reader that it says what it means and means what it says; here, the Article simply said that The Times was unable to verify Mercola's claim that he was the lead author of a peer reviewed publication regarding vitamin D and COVID. Doc. 1-1 (Compl. Ex. A) at 4. The District Court thus correctly concluded that because Statement Two cannot *reasonably* be interpreted as having a tendency to lower Mercola's reputation, expose him to hatred or contempt, or injure his reputation, Statement Two is not actionable as a matter of law. This Court should affirm on that same basis as well.

### B. Mercola's Newly Raised Arguments Regarding Statement Two Are Improper And Do Not Render It Defamatory In Any Event

On appeal, Mercola raises several new arguments in an effort to embellish Statement Two with a defamatory meaning. Mercola forfeited those arguments by

not making them below, but even if the Court were inclined to consider them they would fail on their merits.

**First**, conflating the defamatory meaning and damages elements of the defamation tort, Mercola argues that Statement Two is defamatory because, he baldly asserts, he has "suffered professional harm by way of damage." Mercola Br. at 30. On this point Mercola cites to the allegation in his Complaint that The Times "has caused irreparable harm to Dr. Mercola's reputation and business." *See* Doc. 1 (Compl.) at 18 ¶ 63. Such a threadbare allegation, however, is not enough to survive a Rule 12(b)(6) motion. *Heinen v. Royal Caribbean Cruises Ltd.*, 806 F. App'x 847, 850 (11th Cir. 2020) (rejecting appellants' "general allegation of 'physical and emotional damage'" as a "threadbare assertion of harm" that is not "sufficiently plausible" to state a claim).

Moreover, Mercola misstates basic defamation law, and the underlying First Amendment principles, in arguing that a statement is defamatory *because* it allegedly causes injury. Every day, for example, The Times publishes reviews of books, movies, and other cultural offerings. *See* Arts, *The New York Times*, https://www.nytimes.com/section/arts. A critical review can negatively impact the financial success of a work – but that does not make the review *defamatory* of the work's creators. Even if Mercola had plausibly alleged that Statement Two caused

injury, therefore, that alone would not demonstrate Statement Two conveys a defamatory meaning as a matter of law.

**Second**, attempting to build on the first point and relying on an approach that courts across the country have soundly rejected, Mercola states that "the Article had nearly 1,000 comments from readers, many of which were negative." Mercola Br. at 5. Plaintiffs cannot demonstrate defamatory meaning, however, by pointing to third-party comments about the challenged publication. *See, e.g.*, *Daniels v. Loop Interactive Grp., LLC*, 2015 WL 134308, at *7 (Cal. Ct. App. Jan. 9, 2015), *rev. denied* (Mar. 25, 2015) (comments posted to online version of article "are not indicative of whether the average reader understood" article's alleged defamatory meaning); *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 2014 WL 4651643, at *7 (D. Colo. Sept. 18, 2014) (online comments are "inherently unreliable" because "Defendant has no way of testing who made the comments, the bases for these comments, or even verifying that the comments were not made by Plaintiff or its representatives"); *Digital Music News LLC v. Superior Court*, 171 Cal. Rptr. 3d 799, 810 (Cal. Ct. App. 2014) (noting "commentary has become ubiquitous on the Internet and is widely perceived to carry no indicium of reliability and little weight"); *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 2014 WL 1319361, at *5 (D. Colo. Apr. 2, 2014) (declining to

consider iTunes reviews because as "essentially anonymous online comments, they are inherently unreliable").[6]

**Third**, Mercola improperly attempts to amend his Complaint on appeal by asserting a defamatory meaning derived from the *updated* version of Statement Two, which has never been at issue in this case. From the start, Mercola has argued that the *original* version of Statement Two defamed him because, he claims, "it suggests that [he] was lying about his scholarly work, or so confused he could not identify it." *See, e.g.*, Mercola Resp. in Opp. to Mot. to Dismiss (Doc. 32) at 8. For the first time in this appeal, however, Mercola insists that the updated version of Statement Two – stating that The Times was "unable to verify the claims in the study" – defamed him by "insinuat[ing] his claims in the peer-published study . . . were simply wrong." Mercola Br. at 29. In addition to being forfeited for not having been raised below, this argument fails because Mercola's Complaint did not even challenge the updated version of Statement Two, and "[i]t requires no citation of authority to say that a plaintiff cannot amend its complaint

_____

[6] Mercola does not identify even a single comment that says the commenter thought less of Mercola *as a result of Statement Two*, rather than from some other, unchallenged part of the Article. *See* Mercola Br. at 29-30. Thus, even if the Court were to give Mercola's argument any weight, and it should not, it still does not amount to a *plausible* allegation that Statement Two is defamatory.

on appeal." *Durango-Georgia Paper Co. v. H.G. Est., LLC*, 739 F.3d 1263, 1272 n.23 (11th Cir. 2014).

Moreover, for the same reason that it does not convey anything defamatory about Mercola to say that The Times was unable to verify his authorship of the study, it also does not convey anything defamatory about Mercola to say that The Times was unable to verify his findings in that study. *See supra* at 22-23. Even if Mercola could properly challenge the updated version of Statement Two, therefore, he would still fail to show that it reasonably conveyed a defamatory meaning.

Because Mercola has failed to sufficiently allege that Statement Two tends to expose him to hatred, ridicule, contempt, or personal or professional injury, his defamation claim fails as to that statement. This Court should likewise conclude that Statement Two is not defamatory and affirm the dismissal order accordingly.

## III. THIS COURT CAN ALSO AFFIRM THE RULING BELOW ON THREE INDEPENDENT AND ALTERNATIVE GROUNDS

In addition or as an alternative to the bases discussed above, this Court can affirm the District Court's dismissal order on any or all of three other grounds as well. Specifically, the Complaint (1) fails to plausibly allege that The Times's news report is materially false; (2) fails to plausibly allege that The Times published the news report with actual malice; and/or (3) fails to plausibly allege that Mercola met Florida's pre-suit requirements for libel actions. *See, e.g.*, *Michel*, 816 F.3d at 691-92 (affirming dismissal on alternate grounds).

## A. Mercola Failed to Plausibly Allege That the Article Is False

The fundamental requirement for a defamation claim is that a challenged statement must be *materially* false. *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983); *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 283 (1974) (same). Plaintiff bears the burden of pleading and proving falsity. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986). In analyzing falsity, the Court looks at an article as a whole and assesses its overall meaning, because a challenged statement is not materially false unless it "affect[s] the gist of the story by creating a different impression in the mind of the viewer" than the portions of the publication that are *not* challenged. *Readon v. WPLG, LLC*, 317 So. 3d 1229, 1235 (Fla. 3d DCA 2021); *see also Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991)). This basic requirement for all defamation actions owes as much to the Constitution as it does to common sense: a plaintiff cannot wordsmith a claim out of one or two statements when the remainder of the report conveys the same meaning and is not challenged as untrue.

In *Smith v. Cuban American National Foundation*, for example, plaintiff sued over a statement in a documentary accusing it of criminality, but the plaintiff did not challenge parts of the documentary that "essentially implie[d] the same thing." 731 So. 2d 702, 707-08 (Fla. 3d DCA 1999). The court held that the plaintiff could not establish "material falsity" because unchallenged portions of the

documentary conveyed the same overall message as the challenged statement: removing the challenged statement would not have changed its message. *Id.*; *see also Berisha v. Lawson*, 973 F.3d 1304, 1315 (11th Cir. 2020) (applying Florida law) ("the overall 'gist' of the book's depiction of [plaintiff] would not materially change" if the challenged words were removed).

Mercola's Complaint could have been dismissed for the same reason. Mercola alleges that Statements One and Two are defamatory because they gave readers the impression he is "unreliable and makes false statements," and "spreads 'misinformation' or 'disinformation.'" Doc. 1 (Compl.) at 19-22 ¶¶ 71, 80, 90. But Mercola does not challenge other statements that he concedes carry the same meaning, *see id.* at 14 ¶ 55, nor does he challenge statements in the Article, for example, that he "has built a vast operation to push natural health cures, disseminate anti-vaccination content and profit from all of it"; that he "often ask[s] pointed questions about [vaccine] safety and discuss[es] studies that other doctors have refuted"; that he has a "cycle" of "making unproven and sometimes far-fetched health claims, . . . and then selling products online . . . that he promotes as alternative treatments"; that "Facebook said it has labeled many of [his] posts as false . . . and removed some of his pages after they violated its policies"; and that the FDA "issued warning letters to [him] for selling unapproved health products in 2005, 2006 and 2011." *See generally* Doc. 1-1 (Compl. Ex. A) at 2-7.

Because removing Statements One and Two would not change the unchallenged "gist" of the Article, Mercola's defamation claim fails as a matter of law even if the two statements were shown to be false. This Court can and should affirm the District Court's dismissal on this straightforward basis as well.

## B. Mercola Failed To Plausibly Allege Actual Malice Fault

Mercola's claims also could have been dismissed for the independent reason that he does not adequately plead the Article was published with actual malice.

As a conceded public figure, Mercola must plead "facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge that it was false" or that the individuals at The Times responsible for the Article "actually entertained serious doubts as to the veracity of the published account." *Moore*, 109 F.4th at 1365. This is a "daunting" challenge. *Klayman v. City Pages*, 2015 WL 1546173, at *13 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F. App'x 744 (11th Cir. 2016). For one, "[a]ctual malice is a subjective test," *Moore*, 109 F.4th at 1365, and requires "more than a departure from reasonable journalistic standards" or a "failure to investigate," *Michel*, 816 F.3d at 703. For another, "ill-will, improper motive or personal animosity plays no role in determining whether a defendant acted with actual malice." *Moore*, 109 F.4th at 1366 (cleaned up).

None of Mercola's attempts to plead actual malice is legally sufficient, whether considered individually or collectively.

**First**, throughout his Complaint, Mercola asserts, in conclusory fashion, that The Times published the challenged statements knowing they were false or "with reckless disregard for the truth and with actual malice." *See* Doc. 1 (Compl.) at 6, 8 ¶¶ 25, 34; *see also id*. at 4, 6, 14, 18, 20 ¶¶ 14, 24, 52, 68, 79.[7] These boilerplate incantations of the actual malice standard, without supporting facts, are insufficient as a matter of law. *See Michel*, 816 F.3d at 703-04; *Turner*, 879 F.3d at 1273.

**Second**, Mercola alleges that The Times published the statements "out of malice" and with an "intent to harm" him. *See, e.g.*, Doc. 1 (Compl.) at 8, 11 ¶¶ 34, 42. It is well established, however, that allegations about The Times's motivations in publishing do not state a plausible claim of actual malice as a matter of law. *Moore*, 109 F.4th at 1365-66; *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999).

**Third**, Mercola makes various claims that The Times "had the resources to investigate" his claims "but chose not to" do so. Doc. 1 (Compl.) at 14 ¶ 56; *see also id*. at 7, 13 ¶¶ 32, 49. However, as this Court has held in affirming dismissals in other defamation cases, "failure to investigate does not give rise to a finding of actual malice." *Michel*, 816 F.3d at 705.

---

[7] Although Mercola also repeatedly alleges that The Times "should have known" the challenged statements were false, *see* Doc. 1 (Compl.) at 13, 18, 20 ¶¶ 50, 69, 80, the Court properly disregards these allegations because the actual malice test "is not an objective one," *Michel*, 816 F.3d at 702.

**Fourth**, Mercola claims in passing that Statement Two defamed him "by implying that he lies about his research and its publication."  Doc. 1 (Compl.) at 8 ¶ 34.  Such a "conclusory assertion is insufficient to properly" state a claim. *Moore*, 109 F.4th at 1366.  It is especially insufficient to support a plausible allegation of actual malice here because "in defamation-by-implication cases," where a statement has a non-defamatory meaning, as the District Court properly concluded was the case with Statement Two, "plaintiffs must show something that establishes defendants' *intent* to communicate the *defamatory* meaning." *Kendall v. Daily News Publ'g Co.*, 716 F.3d 82, 90 (3d Cir. 2013) (emphasis added); *see also Klayman*, 650 F. App'x at 749 (citing *Kendall* with approval).  Moreover, The Times's updating of Statement Two to clarify what precisely The Times could not verify "tends to negate" that argument for actual malice.  *See Blankenship v. NBCUniversal, LLC*, 60 F.4th 744, 767 (4th Cir. 2023) (cleaned up); *Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 959 (8th Cir. 2020) (noting that willingness to promptly revise error in news report "weighs against" actual malice and affirming dismissal where complaint "did not allege facts inferring" that publication of false statement "was anything but a mistake").

**Fifth**, Mercola asserts that The Times "failed and refused to correct Statement One."  Doc. 1 (Compl.) at 6 ¶ 24.  As this Court has long held, however,

"failure to retract or correct a falsehood does not prove actual malice," *Hunt v. Liberty Lobby*, 720 F.2d 631, 643 n.19 (11th Cir. 1983).

In any event, Mercola has not established that a correction was even warranted here, much less that The Times was on the kind of notice of falsity that the law requires for liability in a public figure defamation case. According to official records of which this Court may take judicial notice, the CDC, FDA, and NIH all agree on the efficacy of COVID vaccines in preventing infection, providing immunity, and reducing transmission of the disease. *See, e.g.*, Doc. 28-5 (Times MTD Ex. 4) at 4 ("Evidence demonstrates that the approved or authorized COVID-19 vaccines are both efficacious and effective against . . . COVID-19[.] . . . [A] growing body of evidence suggests that COVID-19 vaccines also reduce . . . transmission."); Doc. 28-6 (Times MTD Ex. 5) at 3 (FDA reporting Pfizer's COVID "vaccine was 91% effective in preventing COVID-19 disease"). The FDA, moreover, has declared that the mRNA COVID vaccine remains "present in the body for a short time and is not incorporated into – ***nor does it alter*** – an individual's genetic material." *See id.* at 2 (emphasis added).[8]

---

[8] These government reports were properly submitted for the District Court's consideration on a motion to dismiss, without converting it to a Rule 56 motion. *See Coastal Wellness Ctrs., Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018). They are therefore part of the record before this Court.

In the face of these credible reports on the efficacy and effects of COVID vaccines, Mercola fails to allege *any* facts demonstrating that The Times suspected these agencies were wrong and he was right. Mercola thus does not plausibly allege that The Times knew it would be false to describe his claims about COVID vaccines as "easily disprovable." Put another way, it defies common sense, given the publications of these federal health agencies, that The Times could have known that describing Mercola's claims about COVID vaccines as "easily disprovable" was false. *Iqbal*, 556 U.S. at 679 (determining the sufficiency of a complaint does not require a court to check its common sense at the door).

**Sixth**, in opposing The Times's motion to dismiss below, Mercola attempted to raise new theories of actual malice not pleaded in his Complaint, none of which sufficed in any event. For example, although Mercola suggested otherwise, *see* Doc. 32 (Mercola Opp. to MTD) at 12-13, the law is clear that "[t]he mere existence of a false statement does not, on its own, demonstrate [a defendant's] knowledge" or awareness thereof. *Tobinick v. Novella*, 848 F.3d 935, 946 (11th Cir. 2017). Likewise, Mercola has argued that The Times "continues maligning" him, "even in its [motion to dismiss]," *see* Doc. 32 (Mercola Opp. to MTD) at 16, but he cites no authority (nor could he) for the notion that a party's legal arguments, made years after the challenged publication, could possibly demonstrate actual malice.

In sum, Mercola has failed to allege *any* facts that, alone or together, could plausibly support a finding of actual malice. *See, e.g.*, *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001) (court considered plaintiff's 24 theories alleging actual malice and "rejected all of them"). The Court can therefore affirm the District Court's dismissal of Mercola's Complaint on this alternate ground as well.

### C. Mercola Failed to Satisfy Florida's Pre-Suit Notice Requirements

This Court can also affirm the dismissal of Mercola's Complaint without even reaching the merits. Section 770.01, Fla. Stat., provides that "[b]efore any civil action is brought for publication . . . in a newspaper . . . of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article . . . and the statements therein which he or she alleges to be false and defamatory." This requirement is "a condition precedent to a defamation suit," intended to "protect[] the all-important interest in the free dissemination of news." *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1316 (S.D. Fla. 2020) (internal marks omitted).

Mercola served The Times with notice under Section 770.01 on July 17, 2023. *See* Doc. 28-2 (Times MTD Ex. 1) at 2 (FedEx envelope marked "Mon – 17 Jul"). Despite the clear instruction of the statute, however, Mercola commenced this action only four days later, on July 21, 2023. *See generally* Doc. 1 (Compl.). Mercola thus failed to satisfy Section 770.01, and the Complaint must be dismissed

as a result. *See Canonico v. Callaway*, 26 So. 3d 53, 54-56 (Fla. 2d DCA 2010)
(affirming dismissal with prejudice where plaintiff "filed his claim prematurely"
by filing on the *fourth* business day, "a day too soon under section 770.01").

Mercola attempts to escape this conclusion by claiming to have provided
The Times with the requisite notice on July 26, 2021, and again on July 15, 2023.
Specifically, Mercola alleges that his representative emailed The Times on July 26,
2021, "to point out objective inaccuracies in the Article, including the Articles
claim . . . that his lead authorship of a study on vitamin D and COVID-19 could
not be verified." *See* Doc. 1 (Compl.) at 8 ¶ 35. Section 770.01 requires *service*,
however, not mere notice. *See* Fla. Stat. § 770.01. And service by email is
insufficient, whether assessed under Florida's service rules or the Federal Rules of
Civil Procedure. *See* Fla. R. Civ. P. 1.080(a); Fla. R. Gen. Prac. Jud. Admin.
2.516(b); Fed. R. Civ. P. 5(b)(2). Moreover, Section 770.01 requires a plaintiff to
identify "the statements [in the publication] which he or she alleges to be false and
defamatory" with specificity. Even under this theory, therefore, Mercola's claims
would be limited to those arising from the statements identified in that July 2021
email – and that did not include Statement One. Doc. 1 (Compl.) at 8 ¶ 35.

Mercola's July 15, 2023 email of the notice letter likewise fails to satisfy
Section 770.01, because even if email were a proper form of service, it was sent on
July 15, 2023, a Saturday. The five-day period of Section 770.01 is counted in

business days, *Canonico*, 26 So. 3d at 56, meaning that service would not have been effective until Monday, July 17, and the Complaint was still premature. *Id.*[9]

In any event, the District Court found, and Mercola has conceded, that he failed to "allege compliance with § 770.01 in his complaint." Doc. 55 (Op. & Order) at 4 n.1 (citing Fed. R. Civ. P. 9(c)); *see also Edward L. Nezelek, Inc. v. Sunbeam Television Corp.*, 413 So. 2d 51, 56 (Fla. 3d DCA 1982) ("[t]he rule in Florida is that compliance with conditions precedent must be at least generally averred in the pleadings in order to state a cause of action"). The Complaint fails on that basis alone, and this Court can and should affirm on this alternative ground as well.

## IV.   DISMISSAL WITH PREJUDICE WAS PROPER BECAUSE NO AMENDMENT CAN CURE THE COMPLAINT'S DEFICIENCIES

The District Court also reached the correct conclusion not just in dismissing the Complaint but in doing so with prejudice. As this Court has explained, although leave to amend is to be granted "freely . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), "justice does not require district courts to waste their time on

---

[9] Mercola argued below that the Court could instead compute time by applying the federal rules rather than Florida's, but that would be improper in a diversity action. *See* 4B Wright & Miller, Fed. Prac. & Proc. Civ. § 1164 (4th ed.) (noting that "[i]n the few cases in which the question of computation has arisen, federal courts consistently have followed the state" computation rules, and that "the federal practice of following state methods of computation in diversity cases undoubtedly will continue").

hopeless cases," *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008). Put differently, a district court need not allow amendment where it would be futile. *See Western Sur. Co. v. Steuerwald*, 760 F. App'x 810, 814 (11th Cir. 2019) ("We review the district court's refusal to grant leave to amend for abuse of discretion, although we exercise *de novo* review as to the underlying legal conclusion that an amendment to the complaint would be futile.") (cleaned up).

The District Court did not abuse its discretion in denying Mercola leave to amend. No amount of re-pleading can change the fact that the efficacy of COVID vaccines is a subject of ongoing scientific debate. Nor can Mercola cure his failure to plead material falsity by challenging additional statements in the Article, as any such claim is now time-barred. Amendment would therefore be futile.[10]

Even now, the only amendment Mercola proffers is to include what he dubs "open-source" information, none of which would address his concession that Statement One is about an ongoing scientific debate, that Statement Two is not defamatory, the lack of material falsity of the Article as a whole, The Times's lack of actual malice, or his failure to satisfy or even allege compliance with Section 770.01. *See* Mercola Br. at 18 n.18.

---

[10] In any event, in the Eleventh Circuit, a request for leave to amend made in response to a motion to dismiss that does not attach a copy of the proposed amended pleading, or set forth the substance thereof, is not proper. *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1163 (11th Cir. 2019); *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999).

For all these reasons, granting leave to amend would be futile in this case, and the Court should affirm the dismissal of Mercola's Complaint with prejudice.

## CONCLUSION

For the foregoing reasons, The Times respectfully requests that this Court affirm the District Court's decision.

Dated:  October 9, 2024   Respectfully submitted,

           BALLARD SPAHR LLP

           */s/ Charles D. Tobin*
           Charles D. Tobin
           Maxwell S. Mishkin
           Isabella Salomão Nascimento
           1909 K Street NW, 12th Floor
           Washington, DC 20006
           Tel: (202) 661-2200
           Fax: (202) 661-2299
           tobinc@ballardspahr.com
           mishkinm@ballardspahr.com
           salomaonascimentoi@ballardspahr.com

           *Counsel for Defendant-Appellee*
           *The New York Times Company*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of Fed. R.

App. P. 32(a)(7)(B) because it contains 9,615 words, excluding the parts of the

document exempted by Fed. R. App. P. 32(f).

2.      This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)

because it was prepared using Microsoft Word in 14-point Times New Roman

font, a proportionally spaced typeface.

*/s/ Charles D. Tobin*
Charles D. Tobin

**CERTIFICATE OF SERVICE**

I certify that on October 9, 2024, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Eleventh Circuit using the Court's CM/ECF system, which will send a notice of electronic filing to the parties in this case, all of whom are registered CM/ECF users.

*/s/ Charles D. Tobin*
Charles D. Tobin