No. 24-10784-A

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

Joseph Mercola,

*Plaintiff-Appellant*

v.

The New York Times Company,

*Defendant-Appellee*

Appeal from the United States District Court
for the Middle District of Florida

No. 2:23-cv-00545-SPC-KCD

---

**APPELLANT'S REPLY BRIEF**

---

Eric P. Early
Jeremy Gray
Early Sullivan Wright
Gizer & McRae LLP
6420 Wilshire Blvd., 17th Floor,
Los Angeles, CA 90048
(323) 301-4660

Carol A. Thompson
Federal Practice Group
801 17th St. N.W., Suite 250
Washington, D.C. 20006
(202) 826-4360

*Counsel for Plaintiff-Appellant*

**Certificate of Interested Persons and
Corporate Disclosure Statement**

The New York Times Company (NYSE: NYT)

Mercola, Joseph

Chappell, Sheri P., U.S. District Judge

Dudek, Kyle, U.S. Magistrate Judge

Ballard Spahr LLP

Tobin, Charles D.

Mishkin, Maxwell S.

Salomão Nascimento, Isabella

The Bonderud Law Firm, P.A.

Bonderud, Andrew M.

Federal Practice Group

Thompson, Carol A.

Early Sullivan Wright Gizer & McRae LLP

Early, Eric P.

Gray, Jeremy

## <u>TABLE OF CONTENTS</u>

I.    Statement One: The District Court's (and The Times') Effort to Protect Defamatory Statements Purportedly Made in the Context of Scientific Debates is Not Supported By the Law or the Facts......................................................................1

II.   Statement Two. ...................................................................................................5

   A.   The Defamatory Intent of Statement Two Must be Considered in the Context of the Article as a Whole...............................................................................5

   B.   Dr. Mercola Sufficiently Plead Harm. .............................................................7

   C.   The Revised Version of Statement Two Supports Dr. Mercola's Argument of Defamatory Intent of the Statement's Original Version. .....................................13

III.   Dr. Mercola Sufficiently Plead Material Falsity and Malice. He Also Satisfied the Condition Precedent..........................................................................14

   A.   Falsity......................................................................................................14

   B.   Malice. ....................................................................................................15

   C.   Condition Precedent..................................................................................20

Conclusion ...........................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adinolfe v. United Technology Corp.*,
   768 F.3d 1161, 1168 (11th Cir. 2014) ...................................................11

*Arthur v. Offit*,
   No. 01:09-cv-1398, 2010 WL 883745 (E.D. Va. Mar. 10, 2010) .....................1, 2

*Auraria Student Hous. at the Regency*, *LLC v. Campus Vill. Apartments*, *LLC*,
   2014 WL 4651643, at *7 (D. Colo. Sept., 18, 2014) .......................................9, 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................15

*Buckley v. Moore*,
   2021 WL 3173185, at *7 (S.D. Fla. Jul. 26, 2021)..............................................21

*Cousins v. Post-Newsweek Stations Florida*, *Inc.*,
   275 So. 3d 674, 680 (Fla. 3d DCA 2019) ..........................................................24

*Daniels v. Loop Interactive Grp.*, *LLC*,
   2015 WL 134308, at *7 (Cal. Ct. App. Jan. 9, 2015), *rev. denied* (Mar. 25, 2015);
   .................................................................................................................9

*Digital Music News LLC v. Superior Court*,
   171 Cal. Rptr. 3d 799, 810 (Cal. Ct. App. 2014) ...............................................9

*Harte-Hanks Communications, Inc. v. Connaughton*,
   491 U.S. 657, 668 (1989)............................................................... 16, 19

*Heiden v. Royal Caribbean Cruises Ltd*.,
   806 Fed. Appx. 847, 850 (11th Cir. 2020) ........................................................7, 8

*Immanuel v. CNN*,
   618 F. Supp. 3d 557 (S.D. Tex. 2022)...............................................................3

*Khashan v. State Farm Mut. Auto. Ins. Co.*
   No. B290652, 2019 WL 5445199, at *1 (Cal. Ct. App. Oct. 24, 2019) ...............6

*Klayman v. City Pages*,
   2015 WL 1546173, at * 13 (M.D. Fla. Apr. 3, 2015) .........................................15

*Malone v. WP Co. LLC*,
   2023 WL 6447311 (W.D. Va. Sept. 29, 2023) ...................................................3

*Mancini v. Personalized Air Conditioning & Heating*, *Inc.*,
   702 So. 2d 1376, 1378 (Fla. 4th DCA 1997)......................................................24

*Mazur v. Ospina Baraya*,
   275 So. 3d 812, 816 (Fla. 2nd DCA 2019) ........................................................24

*Michel v. NYP Holdings, Inc*.,

816 F. 3d 686, 706 (11th Cir. 2016) ....................................................19

*Myers v. Central Florida Investments*, *Inc.*,
   592 F.3d 1201, 1223 (11th Cir. 2010) ...............................................23

*New York Times Co. v. Sullivan*,
   376 U.S. 254, 280 (1964) ..................................................................15

*ONY, Inc. v. Cornerstone Therapeutics, Inc*.,
   720 F.3d 490, 497 (2d Cir. 2013) ....................................................1, 2

*Pielage v. McConnell*,
   516 F.3d 1282, 1284 (11th Cir. 2008) ...............................................11

*Redfield v. Cont'l Cas. Corp.*,
   818 F.2d 596, 610 (7th Cir. 1987) .....................................................23

*Ross v. Gore*,
   48 So. 2d 412, 415 (Fla. 1950) .........................................................24

*Silvester v. Am. Broad. Cos*.,
   839 F.2d 1491, 1493 (11th Cir. 1988) ...............................................15

*SolidFX, LLC v. Jeppesen Sanderson*, *Inc*.,
   2014 WL 1319361, at *5 (D. Colo. Apr. 2, 2014) .............................10

*Swanson v. Baker & McKenzie, LLP*,
   No. 12-c-8290, 2013 WL 1087579, at *1-*2 (Mar. 14, 2013) .............6

*Thompson v. Kindred Nursing Centers East*, *LLC*,
   211 F. Supp. 2d 1345, 1356-57 (M.D. Fla. 2002) ...............................8

*Tobinick v. Novella*,
   848 F.3d 935, 946 (11th Cir. 2017) ...................................................19

*Zorc v. Jordan*,
   765 So. 2d 768, 771 (Fla. 4th DCA 2000) ..........................................5

**Statutes**

Fla. Stat. § 770.01 ..................................................................................22

**Rules**

Fla. R. Civ. P. 1.080(a) ...........................................................................20

Fla. R. Gen. Prac. & Jud. Admin. 2.514(a)(1)(A)..................................22

Fla. R. Gen. Prac. & Jud. Admin. 2.516 .................................................21

Fla. R. Gen. Prac. & Jud. Admin. 2.516(b)............................................21

Dr. Mercola responds to the following points addressed in The Times' Answer Brief.

**I.    Statement One: The District Court's (and The Times') Effort to Protect Defamatory Statements Purportedly Made in the Context of Scientific Debates is Not Supported By the Law or the Facts.**

It is simply untrue, as the district court concluded, that ***all*** "statements" about "unsettled matters of scientific or medical treatment" "cannot" give rise to defamation claims. Doc. 55 – Pp. 5-8 (citing *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 497 (2d Cir. 2013); *Arthur v. Offit*, No. 01:09-cv-1398, 2010 WL 883745 (E.D. Va. Mar. 10, 2010). To the contrary, there is ***no rule that all statements*** about scientific issues are somehow immune from defamation claims.

As explained in the Opening Brief,[1] Pp. 24-34, the analysis for a reviewing court is not simply whether there is an ongoing scientific debate and the challenged statement touches on that debate, but rather whether the challenged statement is the ***type*** of scientific commentary which is unsuitable for a defamation claim. This analysis requires an examination of the facts of the case. As explained in the Opening Brief, Statement One is not the ***type*** of scientific commentary which is unsuitable for a defamation claim.

---

[1] To avoid confusion between document numbers before this Court and the ones before the lower court, the Answer Brief and Opening Briefs are cited to by name; the referenced page numbers are the electronically generated ones at the top of the filings.

Remarkably, The Times ignores this analysis and simply regurgitates the same generalized language from these opinions that led the district court astray: that all comments on scientific debates are immune from defamation claims. Answer Brief – Pp. 24-25. (discussing *ONY* and *Arthur*). ***Not so***.

*ONY* arose from a detailed scientific article weighing the merits of competing medical products and where the author expressed a negative view of one product over the other. *ONY*, 720 F.3d at 496-97. The *ONY* court explicitly limited its holding to statements "drawn" from "data" which were "based on accurate descriptions" of such data. Opening Brief – Pp. 28-29 (quoting holding from *ONY*).

*Arthur* involved a detailed and scientific analysis of childhood vaccines (7,500 words) where the court found that the challenged statement was an "impassioned" outburst made by a medical provider who was a part of that debate. *Arthur*, 2010 WL 883745, at * 5. The *Arthur* court looked at the scientific debate as a whole and determined whether the statement itself could have been defamatory within that context. *See Arthur*, 2010 WL 883745, at * 5 (the "impassioned response … was itself illustrative of the rough-and-tumble nature of the controversy over childhood inoculations and therefore worthy of mention in the *Wired* article, which sought to highlight, among other things, the intense nature of the vaccine debate."). The *Arthur* court in no way blanketly determined the statement was non-defamatory simply because it was made in an ongoing scientific debate.

The Opening Brief further asserted the courts in *Immanuel v. CNN*, 618 F. Supp. 3d 557 (S.D. Tex. 2022); and *Malone v. WP Co. LLC*, 2023 WL 6447311 (W.D. Va. Sept. 29, 2023)—like the district court below—massively overread the holdings of *ONY* and *Arthur*. Each of these cases simply cited to the "scientific commentary" rhetoric of *ONY* and *Arthur*, without actually examining the scope of the rule created by those authorities, Opening Brief – at Pp. 31-32, and The Times makes no effort to factually analyze these cases in the same manner the *ONY* and *Arthur* courts did. Answer Brief – Pp. 25-29.

In contrast to the authorities on which The Times relies, and its mischaracterization of Dr. Mercola's position on Statement One, this is not a case where Dr. Mercola asks this Court to pick his or The Times' side in a debate, whether scientific or otherwise, about the COVID-19 vaccine. Indeed, the Article in question does not engage in a robust back and forth regarding competing claims about the vaccine's ability to prevent infections, provide immunity, or affect the transmission of COVID-19. The Times simply announced in Statement One (without analysis) that all of Dr. Mercola's "assertions" on these matters are "easily disprovable." In so doing, The Times defamed Dr. Mercola, making its readers believe that Dr. Mercola is a quack who makes up his widely read COVID-19 positions out of whole cloth, and who should thus be embarrassed, treated as a fringe maniac, and disposed of.

The Times flatly asserted that there was ***only one side*** in the COVID-19 vaccine debate—the side taken by the Times—and that Dr. Mercola had no credible views on these matters. However, as set forth at length in the Opening Brief, there is considerable contemporaneous evidence—such as Pfizer's own data—that corroborated Dr. Mercola's supposedly "easily disprovable" assertions. Opening Brief – Pp. 24-26. The Times' assertion that Dr. Mercola's claims are "easily disprovable" is false and this Court does not need to even dip its toe, much less wade, into a scientific debate to reach this conclusion.

In sum, this Court should reject The Times' arguments that the courts in *Arthur*, *Immanuel*, and *Malone* did not impose any "rigid limits" on the applicability of their reasoning to scientific commentary, and that Dr. Mercola supposedly offers no "principled distinction" for his position that The Times' cases have no application to the present dispute. Answer Brief – Pp. 27-28. It is axiomatic that legal rulings are necessarily intertwined with their underlying facts. Dr. Mercola's Opening Brief demonstrates, by its analysis of the case law, that the reticence of courts to involve themselves in scientific debates is not triggered by the circumstances present in this case, but rather through a comparison of the underlying facts of the relevant cases. As discussed, the cases relied on by The Times either involve circumstances much different than the present case (*ONY* and *Arthur*) or an overly simplistic reading of

4

those cases (*Immanuel* and *Malone*), and they are all either readily distinguishable or unpersuasive.

## II.    Statement Two.

### A.    The Defamatory Intent of Statement Two Must be Considered in the Context of the Article as a Whole.

"The allegedly defamatory words *must* be read in the context of the entire publication[.]" *Zorc v. Jordan*, 765 So. 2d 768, 771 (Fla. 4th DCA 2000) (emphasis added). The Times disregards this legal requirement. Instead, it looks at the statement in isolation and summarily notes that Statement Two "says what it means and means what it says." Answer Brief – Pg. 33. Aside from the fact that The Times ***did*** have access to the publication (because Dr. Mercola emailed it to The Times), if The Times printed nothing other than this one, singular statement, The Times' argument *might* have merit under *Khashan* and *Swanson* (again, notwithstanding the very simple fact that Dr. Mercola did provide a link to the publication). But, with an Article titled "The Most Influential Spreader of Coronavirus Misinformation Online," and a tagline of, "Researchers and regulators say Joseph Mercola, an osteopathic physician, creates and profits from misleading claims about Covid-19 vaccines," (Doc. 1 – Ex. A), The Times' statement that Dr. Mercola *did not provide* the publication and they were subsequently unable to verify Dr. Mercola's authorship (of a *peer reviewed publication*, no less) takes on a whole new meaning, one to which

The Times cannot now feign ignorance. In the context of the Article as a whole, any reasonable person would take Statement Two to mean Dr. Mercola's position on the COVID-19 vaccines and other preventative and counter-measures is nothing more than an outright lie—said without any support, all for the sake of making a profit. In other words, he is nothing more than a "quack" and a "snake oil salesman," peddling uncorroborated claims of COVID-19 preventative measures. Indeed, that is what *two separate commentors* wrote in response to the Article. Doc. 1 – Pp. 16-17.

Contrast this case with the two "unable to verify" cases relied upon by The Times: *Khashan v. State Farm Mut. Auto. Ins. Co.* No. B290652, 2019 WL 5445199, at *1 (Cal. Ct. App. Oct. 24, 2019) and *Swanson v. Baker & McKenzie, LLP*, No. 12-c-8290, 2013 WL 1087579, at *1-*2 (Mar. 14, 2013). The challenged correspondence in these two cases contained nothing more than the "unable to verify" statements themselves (one in denial of an insurance payment and the other in a response to a request for prior-employment verification). In neither of these two cases were the comments couched in correspondence that discussed anything more than the inability to verify; the sole purpose of the challenged correspondence was to relay the defendants' inability to verify the requested information. Indeed, the *Khashan* court noted that, "Repetition of a true statement is not libel." *Khashan*, 2019 WL 5445199 at *6.

The significant difference here is that The Times *did* have the ability to verify the publication because Dr. Mercola *emailed it to The Times*. Notably, The Times does not detail in its Answer Brief how or why it was unable to verify the publication, likely because there is no valid excuse. The Times cannot now escape liability by disregarding the legal analysis requirement set forth in *Zorc*, *supra.* The lack of this analysis only serves to underscore the defamatory nature of the Statement.

**B.    Dr. Mercola Sufficiently Plead Harm.**

The Times' suggestion that Dr. Mercola has failed to adequately plead damages proceeds from a misstatement of the applicable law. Answer Brief – Pp. 34-35 (*citing Heiden v. Royal Caribbean Cruises Ltd.*, 806 Fed. Appx. 847, 850 (11th Cir. 2020). The Times miscites *Heiden* and suggests, without explanation, that there exist some sort of unspecified "threadbare" criteria which can be applied to an initial pleading and that Dr. Mercola's Complaint supposedly fails this test. *Id*. *Heiden* is entirely distinguishable and does not establish any "threadbare" rule of pleading.

The *Heiden* plaintiffs were cruise ship passengers suing for personal injuries when a travel delay caused them to encounter a hurricane. *Id.* at 849. Their original complaint failed to allege *which* plaintiff was injured *in what* manner and the trial court dismissed these inadequate allegations and ordered the plaintiffs to itemize the types of damages suffered by each plaintiff. *Id*. The plaintiffs ignored this order and

7

simply repeated their "shotgun" approach of listing various injuries without linking them to specific plaintiffs. *Id*. Not surprisingly (given that they ignored the court's instructions), the trial court dismissed these claims, and the Eleventh Circuit affirmed. *Id*. at 850. Importantly, and contrary to The Times' suggestion, the *Heinen* court did not hold that pleading injuries in general terms is improper (*i.e*. the *Heinen* court did not take issue with the use of terms such as "physical pain and suffering" or "disfigurement"), but rather, that the plaintiffs in that particular case failed to say *which* injuries each of them had suffered. *Id*.

Contrary to The Times' mischaracterization of the law (which we have seen throughout their Answer Brief), the pleading standard required for damages (even special damages) is simply whether "the plaintiff's complaint sufficiently alerted the 'defendants to the nature of the special damages claimed.'" *Thompson v. Kindred Nursing Centers East*, *LLC*, 211 F. Supp. 2d 1345, 1356-57 (M.D. Fla. 2002) (*quoting Bazal v. Belford Trucking Co., Inc*. 442 F. Supp. 1089, 1100 (S.D. Fla. 1977)).

In *Thompson*, the court even found that the plaintiff's mere pleading of a demand for "pre-judgment interest" without alleging the "minutia" underlying the demand *was sufficient* to notify the defendant of the damages sought. *Thompson*, 211 F. Supp. 2d at 1357.

Unlike the plaintiffs in *Heiden*, and going well beyond the minimal pleading requirements addressed in *Thompson* and *Bazal*, Dr. Mercola has adequately pleaded the injuries he suffered in a manner which notifies The Times of the harm he has suffered and the basis for the damages he is seeking. *See* Doc. 1 – ¶¶ 43, 45, 72, 73 82, 83, 84, and 89 (asserting he "suffered reputational harm and was subjected to public hate, distrust, ridicule, contempt, and disgrace"; the statements caused injury "to his personal and professional reputation, as well as to his business"; and that he "lost earnings, income and business opportunities"). These allegations are more than sufficient to "notify" The Times as to Dr. Mercola's harm and the damages sought.

And, in fact, Dr. Mercola provided much more detail than the law requires. His complaint included captured images of commentors to the Article. Doc. 1 – Pp. 16-17. One commentor likened Dr. Mercola to "a serial killer on the loose" who is "responsible for tens of thousands of deaths," while another said he was a "fool [who] should be in prison." Doc. 1 – Pg. 16. Two additional individuals commented that Dr. Mercola should no longer have a medical license. Doc. 1 – Pp. 16-17.

The Times underplays these well-pleaded facts by blanketly asserting that "Plaintiffs cannot demonstrate defamatory meaning … by pointing to third-party comments about the challenged publication." Answer Brief – Pp. 35-26. This assertion, however, is disingenuous and unsupported by the cited case law:

*Daniels v. Loop Interactive Grp., LLC*, 2015 WL 134308, at *7 (Cal. Ct. App. Jan. 9, 2015), *rev. denied* (Mar. 25, 2015);

*Auraria Student Hous. at the Regency*, *LLC v. Campus Vill. Apartments*, *LLC*, 2014 WL 4651643, at *7 (D. Colo. Sept., 18, 2014);

*Digital Music News LLC v. Superior Court*, 171 Cal. Rptr. 3d 799, 810 (Cal. Ct. App. 2014); and

*SolidFX*, *LLC v. Jeppesen Sanderson*, *Inc.*, 2014 WL 1319361, at *5 (D. Colo. Apr. 2, 2014).

Answer Brief – Pp. 35-36. A fair reading of each one of these cases reveals they do not support The Times' universally stated prohibition on the use of online comments to plead harm in a defamation case.

The *Daniels* case, for instance, dealt with very specific comments that were completely astray of the challenged article's topic and content. *Daniels*, 2015 WL 134308, at *7. The challenged article alleged the plaintiff was a murderer and gang member, but the first five comments to the article (the only comments provided to the *Daniels* court) pertained to unrelated topics, such as a hair care product website and Instagram accounts. *Daniels*, 2015 WL 134308, at *7.

*Digital Music* dealt with a discovery issue—a subpoena served upon Digital Music News (an entity that was not a party to the underlying lawsuit) for the identity of an anonymous commentor on one of the News' online articles; the nature of the underlying lawsuit was copyright infringement, not defamation. *Digital Music News*, 171 Cal. Rptr. 3d at 801-04. The court's analysis was focused on whether the moving party (the defendant in the underlying copyright infringement case) had

demonstrated a "compelling need for [the] discovery," and whether that compelling need was "so strong as to outweigh the privacy right [of the commentor] when these two competing interests are carefully balanced." *Id.* at 809. While the *Digital Music* court found the anonymous commentor's post contained no nexus to the underlying copyright infringement lawsuit, and the discovery of the commentor's identity would not aid the defendant in its defense, the court did note that it ***would*** uphold a subpoena for the identity of an online commentor ***in the instance of a defamation suit***. *Id.* at 810.

Finally, the dicta from *Auraria Student Hous.* and *SolidFX* was written on decisions involving the admissibility of anonymous online comments into evidence and as forming the basis of an expert's opinion under Federal Rules of Evidence 702 and 703. *Auraria*, 2014 WL 4651643, at *7; *SolidFX*, *2*014 WL 1319361, at *5. Neither case dealt with the much lower burden applied in the motion to dismiss phase (*i.e.*, that the allegations in a complaint must be accepted as true).

The Times omits this context in its Answer Brief because the facts and analyses in those cases do not actually support The Times' proposition that the online comments cannot be pleaded by Dr. Mercola to support his sustained harm. On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court takes as true the factual allegations in the complaint and construes them in a light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *see also*

11

*Adinolfe v. United Technology Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." (citing *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006)). The dicta in *Auraria Student Hous.* and *SolidFX* are inapplicable, as both deal with admissibility at trial, not whether the facts can be accepted as true (as they must) by a court reviewing a motion to dismiss. Indeed, The Times' own cited case law—*Digital News*—supports the notion that Dr. Mercola would be able to pursue the identity of these commentors during discovery.

Further, even though the commentors do not specify which statement made them call Dr. Mercola a murderer or call for the revocation of his medical license, the comments are nonetheless appropriately pleaded in support of harm because they pertain to the context of the entire Article. Given the Article's title regarding Dr. Mercola's spreading COVID-19 misinformation, a comment indicating that Dr. Mercola is "responsible for tens of thousands of deaths" in relation to COVID-19 certainly applies to the Article as a whole. Contrary to the findings of the *Daniels* court—which found the random, anonymous comments were in no way connected to the topic of the challenged article or that the commentors understood the purpose of the article—it is abundantly clear that each one of the cited commentors in Dr.

Mercola's complaint understood The Times' purpose of authoring and publishing the Article.

**C.    The Revised Version of Statement Two Supports Dr. Mercola's Argument of Defamatory Intent of the Statement's Original Version.**

Dr. Mercola maintains his challenge to The Times' original version of Statement Two; however, he highlighted the revised version in his Opening Brief because it further underscores the defamatory intent of the original version. The original version said Dr. Mercola did not identify the peer reviewed publication, and The Times was unable to identify it. Doc. 1 – Pg. 7. The revised version included a link to the peer reviewed publication, followed by a claim that The Times was now "unable to verify the claims in the study." Doc. 1 – Pp. 10-11.

The revision could have simply inserted the publication link after Dr. Mercola's quote. The Times did no such thing, though, because such a simplistic revision would have run counter to the purpose of the Article (painting Dr. Mercola as a spreader of COVID-19 misinformation). When exposed by a Senior Editor at *The Atlantic*, The Times was forced to revise the statement, but only did so in a manner that did not frustrate its original intent. While Dr. Mercola does not challenge the revised statement, it is most certainly an important consideration for this Court in determining the defamatory nature of the original version.

### III.    Dr. Mercola Sufficiently Plead Material Falsity and Malice. He Also Satisfied the Condition Precedent.

### A.    Falsity.

The only challenge The Times raises on falsity is that the two statements do not affect the "gist" of the story such that their removal would not create a different impression on the reader. Answer Brief – Pg. 38-40. That is simply untrue. These two statements are the only pointed statements about Dr. Mercola and *his medical position* on COVID-19. Doc. 1 – Ex. A. The rest of the Article either has generalities about COVID-19 theories or is about other areas of Dr. Mercola's practice that are wholly unrelated and untethered to COVID-19. Without these two statements, The Times' claim that Dr. Mercola was the most influential spreader of ***COVID-19 misinformation*** would be lost on the reader, or difficult to truly ascertain. Indeed, without these two statements, commentors would not have attributed "tens of thousands" of COVID-19 related deaths to him. Doc. 1 – Pg. 16.

As The Times notes in its Answer Brief, Dr. Mercola pleaded that these two statements gave readers the impression that he is "unreliable and makes false statements," and "spreads 'misinformation' or 'disinformation.'" Answer Brief – Pg. 39 (citing Doc. 1 – Pp. 19-22, ¶¶ 71, 80, 90). He also dedicated two pages of his Complaint to direct quotes from commentors that display these exact sentiments. Doc. 1 – Pp. 16-17. With these allegations, Dr. Mercola more than satisfied his

pleading requirement under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) for falsity.

### B.    Malice.

To plead actual malice a plaintiff must allege facts sufficient to give rise to a reasonable inference that the false statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). Importantly, this test is not an objective one, but rather requires **subjective** examination of whether the defendant entertained serious doubts about the veracity of the published account or was highly aware it was probably false. *Silvester v. Am. Broad. Cos*., 839 F.2d 1491, 1493 (11th Cir. 1988). It is true that actual malice can be challenged by a motion to dismiss; however, the factual nature of this subjective inquiry is better left for summary judgment—as The Times effectively acknowledges by citing this court to *Klayman v. City Pages*, 2015 WL 1546173, at * 13 (M.D. Fla. Apr. 3, 2015), **a case decided at summary judgment**. Answer Brief – Pg. 40 (cited by The Times for the proposition that establishing actual malice is difficult).

And while actual malice is not established by a defendant's "ill will" *per se*, it is also true that a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence, and that evidence of the defendant's "motive" or lack of "care" can be relevant to the actual malice inquiry. *Harte-Hanks Communications,*

*Inc. v. Connaughton*, 491 U.S. 657, 668 (1989). As discussed at length in the Opening Brief, The Times' motive for trashing Dr. Mercola in the article was part of a larger effort to quash dissenting voices concerning COVID-19 preventative and counter-measures. This context is not only relevant to show that The Times published Statements One and Two either knowing they were false or being highly aware that they were probably false, but also that The Times proceeded in furtherance of this effort. Thus, Dr. Mercola's allegations of The Times' ill will are not designed to establish actual malice by themselves, but rather provide important context showing that the publication either intentionally or recklessly published false statements about him.

Tellingly, The Times attempts to divorce its publication decisions from this important context by disaggregating the actual malice analysis into six numbered points. Answer Brief – Pp. 40-45. However, the article's context is relevant to the various ways in which Dr. Mercola has alleged actual malice.

**Statement One**. When The Times wrote that all of Dr. Mercola's claims about the COVID-19 vaccine's deficiencies (in preventing infections, providing immunity, or stopping transmission) were "easily disprovable" it either had a basis to make such a factual assertion or it did not. (If the paper claims it had ***no basis*** to make this assertion, then it, by definition, acted with actual malice.) But, of course, The Times seeks to defend Statement One. Dr. Mercola alleges that, given the unambiguous

nature of a statement that all of his views are "easily disprovable," The Times must have either known, or entertained, serious doubts that such a thing could be true. Indeed, the U.S. Food and Drug Administration's own statement on the Pfizer vaccine in December 2020, as cited in the Opening Brief (Pg. 26) and which is entirely consistent with Dr. Mercola's critiques of the vaccine, operates to falsify Statement One. And, contrary to The Times' false arguments in its Answer Brief, this is ***not*** a case where Dr. Mercola is relying on the claim that The Times failed to "investigate." Answer Brief – Pg. 41. Dr. Mercola's point is that, given the sweeping (and highly pejorative) nature of The Times' characterization of his claims, coupled with the contemporaneous conflicting evidence regarding the efficacy of COVID-19 vaccines and The Times' ongoing daily efforts at the time to cause everyone to take the COVID-19 vaccine and silence anyone who refused to support those efforts, it is self-evident that Statement One is untrue or very likely to be so and therefore made with actual malice.

In any event, at a minimum, Dr. Mercola has adequately pleaded actual malice such that he should be permitted to engage in discovery regarding the subjective state of mind(s) of those responsible for Statement One, or at the very least, be granted leave to amend the Complaint.

**Statement Two**. There is no question that Dr. Mercola has adequately pleaded that Statement Two was made with actual malice. As discussed in the Opening Brief,

The Times sought comment from Dr. Mercola prior to publication. Opening Brief –
Pp. 9-10; Doc. 1 – Pg. 6. Among other things, Dr. Mercola emailed The Times that
he is "the lead author of a peer reviewed publication regarding vitamin D and the
risk of COVID-19" and attached a link to the study. Doc. 1 – Pg. 6, Ex. B. The Times
acknowledged receipt of the email. Doc. 1 – Pg. 7. Nonetheless, two days later, The
Times published the following false statement:

> [Dr. Mercola] did not address whether his coronavirus claims were factual. "I
> am the lead author of a peer reviewed publication regarding vitamin D and the
> risk of Covid-19 and I have every right to inform the public by sharing my
> medical research," he said. ***He did not identify the publication and the Times
> was unable to verify his claim***. *Id*. (emphasis added).

Dr. Mercola alleges that this statement by The Times is equivalent to a statement that
he did not author a peer reviewed publication as he claims, and that he lies about his
research and its publication. Doc. 1 – Pg. 8. Dr. Mercola alleges that a link to this
article was included in the email he sent The Times, that was thus in the possession
of The Times when it published the article in question. Doc. 1 – Pg. 7, Ex. B. Such
allegations are more than sufficient to plead that The Times knew what it had
published was false (*i.e.* actual malice) because it possessed the true information
when it published the statement.

The Times attempts to suggest that its direct knowledge regarding the falsity
of Statement Two is somehow insufficient at the motion to dismiss phase by citing
another (largely inapplicable) summary judgement case. Answer Brief – Pg. 44

(*citing Tobinick v. Novella*, 848 F.3d 935, 946 (11th Cir. 2017)). However, *Tobinick* does not hold, as The Times argues, that a party's false statement is insufficient to establish actual malice. In fact, the false statements at issue in *Tobinick* related to deposition testimony that did not even concern the purportedly defamatory statements. *Id*. at 946. Here, the alleged false statement is contained in The Times' article itself and is the basis for Dr. Mercola's defamation claim. And, if anything, *Tobinick* reinforces the conclusion that The Times' motion to dismiss should have been denied because the court there permitted the plaintiff to engage in discovery and depositions based on pleading the defendant's false statements (exactly what Dr. Mercola has done here).

Moreover, that The Times would ignore the fact it had Dr. Mercola's article in hand, and then falsely publish that such did not exist, is consistent with the more general effort to silence those taking issue with the conventional COVID-19 narrative. Such context and motive are certainly relevant in this case to the actual malice inquiry. *Harte-Hanks*, 491 U.S. at 668.

As discussed, Dr. Mercola has adequately pleaded actual malice. However, in the event this Court disagrees, The Times' own authority requires that he be given leave to amend. *Michel v. NYP Holdings, Inc.*, 816 F. 3d 686, 706 (11th Cir. 2016) (cited by The Times in its Answer Brief – Pp. 30-31.) In *Michel*, the trial court dismissed a defamation claim on grounds other than actual malice. This Circuit

reversed the trial court's ruling, but on its own found a failure to plead actual malice. The Court then also ruled that a dismissal on such grounds must be "without prejudice and the plaintiff should have the opportunity to amend his complaint." *Id*.

### C.    Condition Precedent.

The notice issue is simple and straightforward, no matter how complicated and convoluted The Times tries to make it. Answer Brief – Pp. 45-47. Florida Statute § 770.01, titled "Notice condition precedent to action or prosecution for libel or slander," prescribes:

> Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory.

Dr. Mercola emailed the detailed notice to The Times' counsel on July 15, 2023—a fact The Times does not dispute. Answer Brief – Pg. 46; *see also* Doc. 28 (The Times' Motion to Dismiss Before District Court) – Pg. 9, fn 3. Instead, The Times boldly asserts that "service by email is insufficient." Answer Brief – Pg. 46 (citing Fla. R. Civ. P. 1.080(a); Fla. R. Gen. Prac. & Jud. Admin. 2.516(b), which The Times classifies as "Florida's service rules").

But these "service rules" cited by The Times do not support the contention that service via email is insufficient. All Fla. R. Civ. P. 1.080(a) says is that pleadings shall be served per the requirements set forth in Fla. R. Gen. Prac. & Jud. Admin.

2.516. The Times only cites to Fla. R. Gen. Prac. & Jud. Admin. 2.516(b), which

simply requires service to be made on a party's attorney. It is the very next subsection

that discusses how that service is to be made, a subsection which The Times omitted

in its Answer Brief:

> (b) **Service; How made**. When service is required or permitted to be made
> upon a party represented by an attorney, service must be made upon the
> attorney unless service upon the party is ordered by the court.
>
> (1) *Service by Electronic Mail ("e-mail")*: <u>All documents required or
> permitted to be served on another party must be served by e-mail</u>, unless the
> parties otherwise stipulate or this rule otherwise provides.

Fla. R. Gen. Prac. & Jud. Admin. 2.516(b)(1) (emphasis in original and added).[2]

Notably, The Times does not cite to any case law which prohibits emailing of

this condition precedent notice, likely because there is none. To the contrary, at least

one court in this jurisdiction appears to have accepted the notion that the required

retraction letter under Fla. Stat. § 770.01 ***can*** be served via email. *See Buckley v.

Moore*, 2021 WL 3173185, at \*7 (S.D. Fla. Jul. 26, 2021) (finding the condition

---

[2] Dr. Mercola notes that both Fla. R. Civ. P. 1.080(a) and Fla. R. Gen. Prac. & Jud.
Admin. 2.516(a) refer to pleadings after an initial pleading is filed; however, The
Times does not make this distinction in its Answer Brief (rather, it refers to Fla. R.
Gen. Prac. & Jud. Admin. 1080 and 2.516 as "Florida's service rules"), and it
provides no other reference to Florida statutes or rules. It does cite to Fed. R. Civ. P.
5(b)(2), Answer Brief – Pg. 46; however, The Times cannot pick and choose which
rules it wants to apply (State or Federal), especially as it argues so strenuously for
the application of Florida's rule on computation of time. *See* Answer Brief – Pg. 47,
fn 9 (citing to 4B Wright & Miller, Fed. Prac. & Proc. Civ. § 1164 (4th ed.) for the
proposition that it would be improper to apply federal rules over Florida's in a
diversity action).

precedent notice was insufficient not because the notices were emailed, but because they lacked specificity of the challenged statements).

With the email constituting service under Fla. Stat. § 770.01, then per Florida rules, the notice was served within the required five days. Fla. R. Gen. Prac. & Jud. Admin. 2.514 governs the computation of time:

(a) **Computing Time**. The following rules apply in computing time periods specified in any rule of procedure, local rule, court order, or statute that does not specify a method of computing time.

(1) *Period Stated in Days or a Longer Unit*. When the period is stated in days or a longer unit of time:

(A) begin counting <u>from the next day that is not a Saturday, Sunday, or legal holiday</u>;

Fla. R. Gen. Prac. & Jud. Admin. 2.514(a)(1)(A) (emphasis in original and added). July 15, 2023, fell on a Saturday. That means the calculation of the requisite five days began on Monday, July 17, 2023. If July 17, 2023 served as day one, then Friday, July 21, 2023 was day five: the first date on which Dr. Mercola could file the suit (and did file his suit).

The Times tries to obfuscate this very simple and straightforward calculation by insinuating that even though the email was sent and received on July 15, 2023, service itself could not have been effected until July 17, 2023, thereby requiring the first day of calculation to begin on Tuesday, July 18, 2023 (and causing the date of the lawsuit to fall on the fourth day, as opposed to the fifth, which would have been

Monday, July 24, 2023). Answer Brief – Pp. 46-47. But The Times does not cite to anything to support its position that if service email is sufficient, that it would not have been considered served until Monday, July 17, 2023. The only thing the applicable rule says is that for calculation purposes, the first calculated day will be the very next non-weekend or holiday date, *i.e.*, Monday, July 17, 2023. And weekend service in these circumstances is logical given that most media and newspapers publish seven days a week.

Dr. Mercola admits he did not explicitly state in his Complaint that he completed this condition precedent. However, the requirement to plead fulfillment of a condition precedent is low: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." *See Myers v. Central Florida Investments*, *Inc.*, 592 F.3d 1201, 1223 (11th Cir. 2010) (quoting Fed. R. Civ. P. 9(c)). Because the condition had been fulfilled by the time Dr. Mercola filed his complaint on July 21, 2023, the only issue remaining is his failure to have generally alleged such in his Complaint. The most appropriate remedy for this oversight is amendment of his Complaint upon remand to the district court. *See Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987) ("[O]n remand the district court should grant plaintiff leave to amend his complaint to comply with Rule 9(c), either alleging performance of all conditions precedent generally or providing an excuse for his failure to perform.").

Notwithstanding the foregoing discussion, if the Court were to find that service had not been effected until July 17, 2023, then dismissal with prejudice is not an appropriate remedy. First and foremost, dismissal is not an absolute requirement. *See Cousins v. Post-Newsweek Stations Florida*, *Inc.*, 275 So. 3d 674, 680 (Fla. 3d DCA 2019) (saying that failure to comply "ordinarily" results in dismissal, not that it "always" results in dismissal).

What should be considered in this case is the legislative intent of the statute. Section 770.01 was written to "protect the public's interest in the free dissemination of news[,]" *Mancini v. Personalized Air Conditioning & Heating*, *Inc.*, 702 So. 2d 1376, 1378 (Fla. 4th DCA 1997), and "to afford to newspapers and periodicals an opportunity *in every case* to make a full and fair retraction in mitigation of the damages which a person may have suffered by reason of the publication." *Ross v. Gore*, 48 So. 2d 412, 415 (Fla. 1950) (emphasis in original). "Because section 770.01 is meant to protect the free press, it only applies to media that publish news ***relatively quickly***." *Mazur v. Ospina Baraya*, 275 So. 3d 812, 816 (Fla. 2nd DCA 2019) (emphasis added); *see also Mancini*, 702 So. 2d at 1378-79 ("When it is recalled that a reporter is expected to determine such facts in a matter of hours or minutes, it is only reasonable to expect that occasional errors will be made." (quoting *Ross*, 48 So. 2d at 415)).

The challenged Article most certainly was not a news piece written within minutes or hours of Dr. Mercola espousing his views on COVID-19 treatments. One would be naïve to think this Article was not "researched" to some degree. Indeed, prior to the publication, The Times took the opportunity to reach out to Dr. Mercola for comment (his response to which formed the basis to challenge Statement Two); even then, there was a full *two-day delay* between when The Times acknowledged receipt of Dr. Mercola's email on July 22, 2021 and when the Article was published on July 24, 2021—not mere minutes or hours. Doc. 1 – Pp. 2, 7.

For further consideration, the one extra day The Times says it should have been afforded to retract the story would have been of no consequence. According to The Times' own website, articles such as the one in this case undergo a legal review in advance of publication, a review focused on determining whether a statement is a legally protected opinion or a fact.[3] Because of this legal review, The Times is so confident in what it publishes that it boasts it "has not lost a libel case brought over one of its articles for at least 50 years."[4] Indeed, since 1922, The Times has maintained a "policy of not paying money to plaintiffs to settle libel suits[.]"[5] Given

---

[3] David McCraw, *How a Times Court Decision Revolutionized Libel Law*, N.Y. TIMES (Nov. 30, 2018), https://www.nytimes.com/2018/11/30/reader-center/libel-law-explainer.html.

[4] *Id.*

[5] *Id.*

The Times' own stated-positions, and the fact it adamantly challenges Statements One and Two as protected, non-defamatory statements, The Times cannot plausibly argue—nor can it be found—that it was prejudiced by the lack of one additional day for possible retraction, as no retraction would have occurred in the first place. For these reasons, dismissal with prejudice would be an inappropriate remedy.

**Conclusion**

Dr. Mercola respectfully reiterates his prayer of relief from his Opening Brief.

/s/ Carol A. Thompson
Carol A. Thompson
Federal Practice Group
801 17th St. N.W., Suite 250
Washington, D.C. 20006
(202) 826-4360

/s/ Eric P. Early
Eric P. Early
Jeremy Gray
Early Sullivan Wright Gizer & McRae LLP
6420 Wilshire Blvd., 17th Floor,
Los Angeles, CA 90048
(323) 301-4660

*Counsel for Plaintiff-Appellant*

**Certificate of Compliance**

I hereby certify that this Brief complies with the page and type-volume limitations of Fed. R. App. P. 32(a)(7) because this Brief contains 6,395 words, excluding the items listed in Fed. R. App. P. 32(f).

I hereby certify that this motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionately spaced typeface using 14-point Times New Roman font.

Dated: October 30, 2024                    /s/ Carol A. Thompson
                                           Carol A. Thompson

                                           *Counsel for Plaintiff-Appellant*